RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LEE GARDNER, PETER DECHANTS, DAVID
LINER, WILLIAM MEYERS, KEITH JUNK, and
MASCO CORPORATION, as Assignee of
Timothy Wadhams,

                 *Plaintiffs-Appellants*,

      *v.*

HEARTLAND INDUSTRIAL PARTNERS, LP,
HEARTLAND INDUSTRIAL ASSOCIATES, LLC,
TIMOTHY LEULIETTE, and DANIEL
TREDWELL,

                 *Defendants-Appellees*.

No. 11-2327

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-13292—Denise Page Hood, District Judge.

Argued: October 3, 2012

Decided and Filed: May 10, 2013

Before: DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Diane M. Soubly, SCHIFF HARDIN LLP, Chicago, Illinois, for Appellants. James D. Weiss, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Diane M. Soubly, Allan Horwich, SCHIFF HARDIN LLP, Chicago, Illinois, Michael L. Pitt, Beth M. Rivers, PITT, McGEHEE, PALMER, RIVERS & GOLDEN, P.C., Royal Oak, Michigan, for Appellants. James D. Weiss, Brian J. Gold, SIDLEY AUSTIN LLP, Chicago, Illinois, Brian A. Kreucher, Gouri G. Sashital, KELLER THOMAS P.C., Detroit, Michigan, for Appellees.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.   The question presented in this case is whether Plaintiffs' state-law tort claim—for tortious interference with a contract that happens to be a pension plan subject to the Employee Retirement Income Security Act of 1974—is "completely preempted" under § 1132(a)(1)(B) of that Act.   The district court held that it was.   We disagree and reverse.

We take the facts as set forth in Plaintiffs' complaint.   Defendant Heartland Industrial Partners, L.P., is a Delaware investment firm that formerly held an ownership interest in Metaldyne Corporation, an automotive supplier in Michigan.   Defendant Timothy Leuliette is a co-founder of Heartland and was the CEO and Chairman of the Board of Metaldyne at all relevant times here.   Defendant Daniel Tredwell is likewise a Heartland co-founder and was a Metaldyne Board member during the relevant times. Plaintiffs are former Metaldyne executives.

In August 2006, Heartland agreed to sell its ownership interest in Metaldyne to another investment firm, Ripplewood Holdings.   Less than two months later, Metaldyne submitted to the SEC a "Schedule 14A and 14C Information" report that detailed the terms of the acquisition.   The report failed to mention, however, that Metaldyne would owe Plaintiffs approximately $13 million as a result of the sale to Ripplewood.   That obligation arose under a change-of-control provision in Metaldyne's "Supplemental Executive Retirement Plan" ("SERP"), in which Plaintiffs were participants.   The SERP is a plan subject to ERISA.

Ripplewood threatened to back out of the deal when it found out about the $13 million SERP obligation.   In response, Leuliette and Tredwell persuaded Metaldyne's Board (of which they were Chairman and a Member, respectively) simply to declare the SERP invalid.   The Board did so on December 18, 2006, though it did not notify Plaintiffs of that fact at the time.   The Ripplewood deal closed less than a month

later, on January 11, 2007.  Leuliette personally collected more than $10 million as a result of the deal.

A month after the deal closed, Metaldyne notified Plaintiffs that it had invalidated the SERP.  In response, Plaintiffs filed several lawsuits, including this one in the Wayne County, Michigan Circuit Court.  The suit pled a single state-law claim against Heartland, Leuliette, and Tredwell, for tortious interference with contractual relations.  The factual basis for the claim was their role in the invalidation of the SERP.  Defendants removed the case to federal court, contending that Plaintiffs' claim was "completely preempted" under ERISA.  Defendants also filed a motion to dismiss the case on that ground.  Plaintiffs filed a cross-motion to remand the case to state court.  In an order entered September 30, 2010, the district court denied Plaintiffs' motion to remand and granted Defendants' motion to dismiss.

We review the court's dismissal de novo.  The issue before us is jurisdictional: whether Plaintiffs' complaint stated a federal question under 28 U.S.C. § 1331, thereby allowing Defendants to remove the case from state court to federal under 28 U.S.C. § 1441. "Ordinarily, determining whether a particular case arises under federal law turns on the well-pleaded complaint rule[,]" *i.e.*, whether a federal question "necessarily appears in the plaintiff's statement of his own claim[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (internal quotation marks omitted).  Thus, "the existence of a federal defense normally does not create" federal-question jurisdiction. *Id.*  That is true, for example, of ERISA's express-preemption clause, 29 U.S.C. § 1144(a), which preempts  "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)[.]"  That a state-law claim is preempted under § 1144(a) is no basis to remove the case from state court to federal.

But there is an exception to the well-pleaded complaint rule:  "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." *Davila*, 542 U.S. at 207 (brackets and internal quotation marks omitted).  Although ERISA's express-preemption clause does not have this effect,

another section of ERISA does.  Section 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  The Supreme Court has said that this provision is part of a "civil enforcement scheme" whose "comprehensive" and "carefully integrated" character "provide[s] strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (internal quotation marks and emphasis omitted).  Thus, when a state-law claim by its nature "falls 'within the scope of' ERISA § [1132](a)(1)(B)[,]" *Davila*, 542 U.S. at 210, two consequences follow:  first, the claim is deemed to be a federal claim (albeit an invalid one) for purposes of federal-question jurisdiction and thus removal; and second, the claim is preempted.  *Id*. at 209.

The issue here is whether Plaintiffs' state-law "tortious interference with contractual relations" claim is within the scope of § 1132(a)(1)(B) for purposes of this rule.  A claim is within the scope of § 1132(a)(1)(B) for that purpose if two requirements are met:  (1) the plaintiff complains about the denial of benefits to which he is entitled "only because of the terms of an ERISA-regulated employee benefit plan"; and (2) the plaintiff does not allege the violation of any "legal duty (state or federal) independent of ERISA or the plan terms[.]"  *Id*. at 210.

By its plain terms, "[t]he two-prong[ed] test of *Davila* is in the conjunctive.  A state-law cause of action is preempted by § [1132](a)(1)(B) only if both prongs of the test are satisfied." *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 947 (9th Cir. 2009).  We choose to focus upon the second requirement here.

Whether a duty is "independent" of an ERISA plan, for purposes of the *Davila* rule, does not depend merely on whether the duty nominally arises from a source other than the plan's terms.  In *Davila* itself, for example, a Texas statute imposed on HMOs a duty to "'exercise ordinary care when making health care treatment decisions.'" 542 U.S. at 212 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 88.002(a)).  The plaintiff there brought a state-law claim against the administrator of his health-care plan, Aetna,

alleging that Aetna breached its duty under § 88.002(a) when it failed to provide coverage for certain prescription drugs.  Aetna argued that the claim was completely preempted under § 1132(a)(1)(B); the plaintiffs responded that their claim was outside the scope of that subsection because it arose under § 88.002(a).  The Supreme Court disagreed with the plaintiffs, noting that the duty of ordinary care under § 88.002(a) excluded any "'obligation on the part of [an HMO] to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity.'"  542 U.S. at 213 (quoting § 88.002(d)).  Thus, Aetna's duty under the Texas statute was conditioned upon the terms of the ERISA plan, which meant that the state-law duty was not independent of the plan for purposes of preemption under § 1132(a)(1)(B).

The court reached the same conclusion in *Arditi v. Lighthouse International*, 676 F.3d 294 (2d Cir. 2012).  There, the plaintiff's employment agreement with Lighthouse recited Lighthouse's obligations to the plaintiff (Arditi) under Lighthouse's pension plan.  When Lighthouse thereafter denied benefits to Arditi under the plan, he brought a state-law claim for breach of the employment agreement.  The Second Circuit held that Lighthouse's duty under the contract was entirely derivative of its duty under the plan—absent any duty under the plan, there was no duty under the contract—and thus the contractual duty was not "separate and independent" of the plan for purposes of preemption under § 1132(a)(1)(B).  *Id.* at 300.

But the contrary was true in *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56 (2d Cir. 2009).  There, the Bank asked Stevenson, a senior executive, to accept a transfer to an affiliated bank in Switzerland.  Stevenson was a participant in the Bank's ERISA plan. Per the plan's terms, Stevenson would lose that status once he transferred to the Swiss bank.  In order to induce Stevenson to accept the transfer, however, the Bank promised to maintain Stevenson's status as a plan participant while he was in Switzerland.  The Bank later reneged on that promise.  Stevenson sued for breach of contract, arguing that the Bank's promise was independent of the plan.  The Second Circuit agreed: the Bank's obligation to maintain Stevenson's status as a participant did not derive from the plan—indeed, the plan said the opposite—but instead arose from a

"separate promise" made by the Bank. *Id*. at 60. It was true, the court noted, that the Bank's promise referred to its plan "as a means of establishing the value of that promise." *Id.* at 60–61. But that did not make the promise dependent on the plan for purposes of complete preemption. For two reasons: first, the plan's terms were relevant to the "extent of [Stevenson's] damages," not to the existence of the duty itself; and second, those "damages would be payable from [the Bank's] own assets, not from the plans themselves." *Id*. at 61.

This case is like *Stevenson*. Defendants' duty not to interfere with Plaintiffs' SERP agreement with Metaldyne arises under Michigan tort law, not the terms of the SERP itself. And more to the point—unlike the state-law duties in *Arditi* and *Davila*, respectively—Defendants' duty is not derived from, or conditioned upon, the terms of the SERP. Nobody needs to interpret the plan to determine whether that duty exists. Thus, Plaintiffs' claim is based upon a duty that is "independent of ERISA [and] the plan terms[.]" *Davila*, 542 U.S. at 210.

But Defendants argue that the SERP's terms are relevant to the Defendants' liability in another way. Under Michigan law, a claim for tortious interference with contract has three elements: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 366–67 (2005). Defendants say that Metaldyne elsewhere asserts that it has not breached the SERPs. And thus, Defendants contend, we must interpret the plan's terms in order to determine liability—rather than just damages, as in *Stevenson*.

The premise of that contention is that a claim is subject to complete preemption under § 1132(a)(1)(B) if *any* determination necessary to liability—rather than just the determination whether the defendant owed a particular duty—requires interpretation of the plan's terms. We have our doubts about that premise, given that *Davila*'s second requirement for complete preemption is couched in terms of duty ("no legal duty . . . independent of ERISA or the plan terms") rather than liability generally. *See Davila*, 542 U.S. at 210; *see also Marin Gen. Hosp.*, 581 F.3d at 950 ("The question under the

second prong of *Davila* is whether the complaint relies on a legal duty that arises independently of ERISA").  But the issue is immaterial here, because under Michigan law one party's complete repudiation of a contract is enough to establish breach.  *See Stoddard v. Mfrs. Nat'l Bank of Grand Rapids*, 234 Mich. App. 140, 163 (1999) ("Under the doctrine of repudiation or anticipatory breach, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to . . . sue immediately for the breach of contract"); *Thompson v. Auditor Gen.*, 261 Mich. 624, 634 (1933) ("If a valid contract is made and entered into, and one party thereto refused to perform it, such refusal amounts to a breach of contract").  And Plaintiffs have alleged facts amounting to repudiation here.  *See* Complaint ¶ 41 ("on December 18, 2006, without stating a reason, or giving plaintiffs any opportunity to be heard, [the Metaldyne Board] declared the Amended SERP invalid").

A determination of Defendants' liability therefore does not require any interpretation of the SERP's terms.  It is true, of course, that those terms would likely be relevant in measuring the amount of Plaintiffs' damages.  As shown above, however, that is beside the point for purposes of *Davila*'s second prong.  Moreover, in this case, as in *Stevenson*, any damages "would be payable from [Defendants'] assets, not from the" plan itself.  609 F.3d at 61.  Finally, Heartland's remaining arguments pertain less to preemption under § 1132(a)(1)(B) than they do to whether Plaintiffs' claims are preempted under § 1144(a)—which is an issue upon which we take no position here.

*Davila*'s second requirement for preemption under § 1132(a)(1)(B) is not met here.  The district court therefore lacked jurisdiction over the case.

*     *     *

The district court's order of September 30, 2010 is reversed, and the case remanded with instructions for the district court to remand the case to the Wayne County Circuit Court.