RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

K.B., by and through her natural parent, Jennifer
Qassis; LILLIAN KNOX-BENDER,

*Plaintiffs-Appellants*,

*v.*

METHODIST HEALTHCARE - MEMPHIS HOSPITALS, dba
Methodist Hospital and Le Bonheur Children's
Hospital,

*Defendant-Appellee*.

> No. 18-6128

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cv-02391—Jon Phipps McCalla, District Judge.

Argued: June 18, 2019

Decided and Filed: July 11, 2019

Before: McKEAGUE, THAPAR, and MURPHY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** James E. Blount, IV, BLOUNT LAW FIRM, PLLC, Collierville, Tennessee, for
Appellants. Buckner P. Wellford, BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC, Memphis, Tennessee, for Appellee. **ON BRIEF:** James E. Blount, IV,
BLOUNT LAW FIRM, PLLC, Collierville, Tennessee, for Appellants. Buckner P. Wellford,
Matthew S. Mulqueen, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ,
PC, Memphis, Tennessee, for Appellee.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.   The only rule without an exception is that every rule has an exception.   The usual rule is that a plaintiff gets to choose where to sue.   Lillian Knox-Bender chose Tennessee state court.   But the Supreme Court carved out an exception to the usual rule when it recognized complete preemption under ERISA.   So, after the discovery of a $100 medical insurance payment, Knox-Bender found her claim removed to federal court.   Because the ERISA preemption exception does not apply here, the usual rule prevails.   We reverse.

I.

When Lillian Knox-Bender suffered injuries from a car accident, she sought medical treatment at Methodist Healthcare.   Methodist billed her over $8,000 for the treatment.   Three insurance plans made payments to Methodist on Knox-Bender's behalf:  her employer-sponsored healthcare plan, her automobile insurance plan, and her husband's healthcare plan.   Knox-Bender says that the insurance plans had already agreed with Methodist on the price of her care.   She claims that, despite this agreement, Methodist overcharged her.   And she alleges that this was common practice for Methodist.   So she and other named plaintiffs, along with a putative class of other patients, sued.   They chose to sue in Tennessee state court.

But they did not stay in state court.   During discovery, Methodist learned that Knox-Bender's husband's healthcare plan was an ERISA plan.   The ERISA plan covered $100 of her $8,000 bill.   Despite the small contribution, Methodist removed the case to federal court claiming complete preemption under ERISA.   The district court agreed with Methodist, applying an exception to the rule that the plaintiff chooses her forum.   It denied Knox-Bender's motion to remand and ultimately entered judgment in favor of Methodist.   We review Knox-Bender's claim that the district court never had jurisdiction de novo.   *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016).

II.

Federal courts have limited jurisdiction.  To remove a case to federal court, the removing party must prove that a federal court has original jurisdiction.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction over cases that "aris[e] under" federal law—"the Constitution, laws, or treaties of the United States."  *Id.* § 1331.  To determine whether a plaintiff's case arises under federal law, federal courts look at the face of the plaintiff's "well-pleaded complaint."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).  This is true even if the defendant may have counterarguments that arise under federal law.  *Id.*  After all, the general rule says the plaintiff is the master of her complaint and gets to choose where and how to sue.  *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon.").  Here, Knox-Bender's complaint is based on state law and does not raise a federal question on its face.  So, under the ordinary test for federal jurisdiction, Knox-Bender's claim stays where it started—in state court.

But the ordinary rule is not without exceptions.  Lower federal courts are creatures of Congress, and Congress can expand federal jurisdiction.  *See* U.S. Const. art. III, § 1; *Bowles v. Russell*, 551 U.S. 205, 210–11 (2007); *United States v. Curry*, 47 U.S. (6 How.) 106, 113 (1848).  The Supreme Court has held that Congress does just that when it passes a statute so broad that it "wholly displaces . . . state-law cause[s] of action through complete pre-emption."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).  In cases like these, state law claims are said to be "in reality based on federal law" and thus removable to federal court.  This is true even if the plaintiff chose to plead state law claims in state court.  *Id.*

ERISA is one of those exceptions.  *Davila*, 542 U.S. at 207–08; *see* 29 U.S.C. § 1132.  ERISA is a federal statute that sets up a regulatory regime to protect people participating in employee benefit plans.  29 U.S.C. § 1001(b).  This regime is the enforcement arm of ERISA, which ensures that employee benefit plan administrators abide by their obligations.  The "comprehensive civil enforcement scheme" in 29 U.S.C. § 1132 "carefully" sets forth who can sue, when they can sue, and what remedies they can get.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53–54 (1987) (citing 29 U.S.C. § 1132; *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985)).  Plan participants and beneficiaries are able "to recover benefits due to [them] under

the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has recognized that this carefully-crafted scheme "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54. Thus, the purpose of ERISA preemption is to guarantee that all claims based on ERISA are brought where and how Congress specified in the ERISA statute. Otherwise, plaintiffs could seek different remedies than those Congress specified. *Davila*, 542 U.S. at 214 n.4 ("A state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive.").

There are two forms of ERISA preemption: express preemption (which applies broadly) and complete preemption (which applies narrowly). Express preemption applies when a state claim falls within ERISA's preemption clause. The clause says: "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" shall be preempted. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting 29 U.S.C. § 1144(a)). Courts have interpreted this clause to preempt state laws that specifically mention ERISA, state laws "where the existence of ERISA plans is essential to the law's operation," and state laws "with an impermissible connection with ERISA plans[.]" *Id.* (internal quotation marks omitted). ERISA's express preemption provision is strong. "The pre-emption provision . . . displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) (citation omitted). But simply because a state law claim might fall within § 1144(a)'s broad preemptive reach does not *alone* suffice to take it outside the normal rule that a federal preemption defense does not make a case with state law claims removable to federal court under §§ 1331 and 1441(a). *See Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir. 2013). So Methodist does not assert this type of preemption here.

Instead, to make a case removable, the case must implicate the "complete preemption" doctrine. A state suit may be completely preempted (and subject to removal) if it asserts a state law cause of action to enforce the terms of an ERISA plan and that suit conflicts with or

duplicates the federal cause of action provided in ERISA's enforcement provision, 29 U.S.C. § 1132(a)(1)(B). *Davila*, 542 U.S. at 214 n.4. So ERISA completely preempts a plaintiff's state law claim when the claim "duplicates, supplements, or supplants the ERISA civil enforcement remedy" in § 1132(a)(1)(B), even if the state law claim makes no reference to or has no explicit connection with ERISA. *Davila*, 542 U.S. at 209. In effect, because "Congress has blotted out (almost) all state law on the subject of" ERISA plans, "a complaint about [such a plan] rests on federal law no matter what label its author attaches." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992).

To determine whether ERISA completely preempts a state claim (making the case removable), we apply a two-step test. *Davila*, 542 U.S. at 210. Since Methodist is the one requesting an exception to the general rule of limited federal jurisdiction, it has the burden to show that the two steps of the test are met. First, the plaintiff must be complaining about a denial of benefits under the terms of her ERISA plan. *Gardner*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. at 210). Second, the plaintiff must only allege the violation of a legal duty (federal or state) that is *dependent* on ERISA or on the ERISA plan's terms. *Id.* "[N]o other independent legal duty [may be] implicated by a defendant's actions." *Davila*, 542 U.S. at 210. A state law claim that meets both requirements is "in essence" a claim "for the recovery of an ERISA plan benefit." *Hogan*, 823 F.3d at 880 (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002)). Thus, the claim must be subject to ERISA's enforcement scheme in federal court.

III.

*Denial of benefits*. Since Knox-Bender has not alleged a denial of benefits under her husband's ERISA plan, ERISA does not completely preempt her claim. Indeed, she makes no claim at all against her ERISA plan. Instead, she claims that the hospital overcharged her for her care. She is suing the hospital, and only the hospital, for its billing practices, and only its billing practices. This is far afield from the "heart" of what ERISA governs: "the rights of beneficiaries . . . against plan administrators." *Hutchison v. Fifth Third Bancorp.*, 469 F.3d 583, 588 (6th Cir. 2006).

In cases where ERISA does completely preempt a state claim, the plaintiff usually alleges that a medical provider denied coverage because an insurer refused to pay. *Davila*, 542 U.S. at 211. Not so here. Knox-Bender does not allege that she failed to receive any treatment she needed or that any insurer failed to pay its share. Nor is it the case that Methodist chose to give Knox-Bender a certain treatment based on an ERISA-benefits determination. *Hogan*, 823 F.3d at 880 (holding that a federal court had jurisdiction because plaintiffs challenged medical providers' determinations "made solely in the course of an ERISA-benefits determination" and alleged damages "aris[ing] from the denial of benefits"). Knox-Bender has not said that Methodist should have given her surgery that it did not or that doctors should have given her different pain pills. She does not contest her coverage or anything about it. Rather, she says that given her coverage, given her benefit determinations, and given the care she received, Methodist "uniform[ly] and intentional[ly]" overcharged. R. 1-5, Pg. ID 221.

Of course, "denial of benefits" is not limited to denial of medical services. It also includes situations where an insurer denies a reimbursement or payment for a medical service the patient has already received. Here again, there is no allegation of any such denial in this case. And Methodist does not argue that it charged Knox-Bender more because her provider denied a payment. *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530–31 (5th Cir. 2009) (explaining that there may be preemption if a provider charges a patient more because of either a full or partial denial of benefits).

We have no evidence that Knox-Bender was denied coverage or benefits, and she does not claim that she was. Since Knox-Bender did not "bring[] [a] suit complaining of a denial of coverage for medical care," her complaint does not trigger ERISA preemption. *Davila*, 542 U.S. at 210.

*Independent duty*. Even if Methodist had shown that Knox-Bender alleged a denial of benefits, it must also show that Knox-Bender complains only of duties breached under ERISA, not any independent legal duty. *Id.* Because it has not, Methodist does not meet its burden to prove the need for federal jurisdiction.

Knox-Bender raises a single claim that is completely independent of ERISA. She claims that Methodist reneged on its agreements with insurance providers by overcharging her and patients like her. She alleges that Methodist breached a duty that stems from those insurance contracts, not from her ERISA plan. Since a determination of Methodist's liability stems from a different agreement and "not the terms of the [ERISA plan] itself," Knox-Bender's claim is based upon a "duty that is 'independent of ERISA and the plan terms.'" *Gardner*, 715 F.3d at 614 (alterations omitted) (quoting *Davila*, 542 U.S. at 210).

Other circuits facing similar hospital-insurer agreement lawsuits have come out the same way. *See Lone Star*, 579 F.3d at 531 ("[Plaintiff's] claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and [Texas law]."); *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051–52 (9th Cir. 1999) (holding that a dispute regarding "provider agreements" was not preempted because it was based on "state law claims arising out of separate agreements for the provision of goods and services").

To see how Knox-Bender's claims are independent of ERISA, consider an example. Imagine you go out to eat at a restaurant and pay for your meal with a credit card. You later see that it charged you more than the price on the menu. First, you switch to a different restaurant. Second, you sue the first restaurant because it owed you a duty to charge the menu price. Although the restaurant could claim that the terms of your credit card agreement are relevant, the restaurant's duty to charge you the agreed-upon price comes from the terms of its menu, not the terms of your credit card. So your claim about menu price is independent of your credit card agreement. You may be thinking, well, I could call my credit card company and ask them to dispute the charge on my behalf. Then the terms of my credit card agreement may come into play. That is true. And it may be that an ERISA plan's negotiation on behalf of a plaintiff over an independent legal duty may render the claim dependent. But that is not the case we have here, and we need not decide that issue. Simply put, Knox-Bender makes no allegations about her ERISA plan. Her claims are independent, and Methodist has not proven the need for federal jurisdiction.

The only reason a court may need to consider the contents of Knox-Bender's ERISA plan is to calculate damages. And, when the terms of an ERISA plan are only "relevant in measuring the amount of [p]laintiffs' damages," ERISA does not preempt the plaintiffs' state law claim. *Gardner*, 715 F.3d at 615; *see also Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 60–61 (2d Cir. 2010) (denying preemption where the ERISA plan's terms would only "need to be referenced in order to establish the extent of [plaintiff's] damages").

But perhaps Methodist has yet another route to showing that Knox-Bender really does raise a dependent claim. When a patient has multiple insurance plans, medical providers and insurance companies negotiate to name one as the primary and the others as secondary. It may be that the ERISA plan, though it paid a mere $100 of Knox-Bender's $8,000 of medical charges, was the primary insurance plan. Or it may at least outline the terms of how to decide primary versus secondary status. If the hospital and the insurance plans agreed that the ERISA plan was primary, then perhaps a reviewing court would have to look to the primary ERISA plan to determine whether Knox-Bender was indeed overcharged. In that case, the argument goes, ERISA complete preemption must apply because a court would have to evaluate the plan to decide the overcharging question. Not quite.

First, neither party disputes that the ERISA plan made only a secondary payment for Knox-Bender. *See* Appellee Br. at 5 ("It is undisputed in the record, however, that the QSource United Healthcare plan paid $100 as a secondary insurance payment."). Of course, we do not have the ERISA plan itself. This is because the plan at the center of this case has gone missing in the midst of a ten-year legal battle. True, the ERISA plan may contain its own terms about primary and secondary insurance status. But the burden to find the elusive ERISA plan falls on Methodist, not on Knox-Bender, for purposes of this jurisdictional question. *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012) ("[T]he removing party . . . ha[s] the burden of establishing federal subject matter jurisdiction[.]"). Methodist suggests it sought the documents in discovery, but they were lost or destroyed. *See* Appellee Br. at 28 n.14. Be that as it may, Methodist is the one asking for complete federal preemption, an exception to the general rule of limited federal jurisdiction. And, in law and in life, asking for an exception sometimes means extra work. Here, it means that Methodist bears the burden of proof. Since

Methodist is unable to present the missing ERISA plan, the plan's hypothetical contents cannot provide a basis for stripping the state courts of jurisdiction.

Second, even if it were true that the ERISA plan was primary, a mere need to look at an ERISA plan is not enough to trigger complete ERISA preemption. *See Gardner*, 715 F.3d at 615; *Lone Star*, 579 F.3d at 532; *cf. Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (stating that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require that the claim" be preempted). Our case law does not set up an automatic triggering mechanism whereby the simple presence of an ERISA plan on the balance sheet brings down the hammer of complete federal preemption every time. If it did, then there would be no need for the two-part test of *Davila*, 542 U.S. at 210. Instead, an allegation that an ERISA plan paid any amount, no matter how small, would be enough to force a case into federal court. Because that is not the law of ERISA complete preemption, we find no complete preemption here.

If anything, the argument that Knox-Bender's state law claims relate to an ERISA plan implicates the separate express-preemption doctrine, which applies if a state law has "an impermissible connection with ERISA plans." *Gobeille*, 136 S. Ct. at 943. But that type of preemption does not make a claim removable. *Gardner*, 715 F.3d at 612. Instead, the state courts can determine if it applies.

\*     \*     \*

The complete preemption of state law claims under ERISA is "a narrow exception to the well-pleaded complaint rule." *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004). Methodist has not met its burden to show that Knox-Bender's complaint fits within that narrow exception. The district court's order of September 30, 2018, is REVERSED, and the case is REMANDED with instructions for the district court to remand the case to the Shelby County Tennessee Chancery Court.