**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0422n.06

No. 19-6249

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Jul 21, 2020

DEBORAH S. HUNT, Clerk

LOREY LOWE,                                              )
                                                        )
      **Plaintiff-Appellant,**                          )
                                                        )          ON APPEAL FROM THE
v.                                                      )          UNITED STATES DISTRICT
                                                        )          COURT FOR THE EASTERN
THE    LINCOLN    NATIONAL    LIFE                )          DISTRICT OF KENTUCKY
INSURANCE    COMPANY;    LINCOLN                )
NATIONAL CORPORATION,                                   )
                                                        )          **OPINION**
      **Defendants-Appellees.**                        )
                                                        )

---

**BEFORE: MOORE, CLAY, and MURPHY, Circuit Judges.**

      **KAREN NELSON MOORE, Circuit Judge.** In 2016, Lorey Lowe began receiving

disability benefits from The Lincoln National Life Insurance Company after suffering from a

stroke, anxiety, and diminished vision. In 2017, Lincoln wrote Lowe a letter informing her of its

determination that she was no longer disabled from performing the main duties of her job, and that

she would no longer receive benefits. In the letter, Lincoln referred to purported guidelines set

forth by the "American Psychiatric Foundation Return to Work Taskforce," which it subsequently

admitted did not exist. Lowe filed suit against Lincoln, alleging a variety of state-law claims.

After Lowe amended her complaint, Lincoln moved to dismiss it on the ground that it was

preempted by the Employee Retirement Income Security Act. The district court agreed with

Lincoln and dismissed the case. Although our reasoning differs from that of the district court, we agree that Lowe's case should be dismissed, and therefore **AFFIRM**.

## I. BACKGROUND

In May 2016, Plaintiff Lorey Lowe suffered a left frontal intracranial hemorrhage, known commonly as a stroke. R. 7 (Am. Compl. ¶ 7) (Page ID #26). After extensive treatment, she returned to work in July 2016. *Id.* ¶ 9 (Page ID #26). Around October 4, 2016, however, she "left her job due to crippling anxiety and greatly diminished vision." *Id.* ¶ 10 (Page ID #26). Pursuant to her employer's group long-term disability insurance policy with Lincoln National Life Insurance Company ("Lincoln"), R. 8-1 (Defs.' Mot. to Dismiss, Ex. A (Ex. 1 at 1)) (Page ID #48),[1] she received disability benefits from November 6, 2016 to June 6, 2017, R. 7 (Am. Comp. ¶ 11) (Page ID #26). On June 14, 2017, Lincoln determined that Lowe "was no longer Totally Disabled from performing the main duties of her occupation," and terminated her benefits. *Id.* ¶ 12 (Page ID #26). Upon Lowe's appeal of this decision, in which she offered further evidence that she was "Totally Disabled," Lincoln sent her a letter denying the appeal on October 26, 2017. *Id.* ¶¶ 13–14 (Page ID #26–27). In relevant part, the letter states:

> Letters were received from your therapist dated 07/27/2017 and 09/20/2017 indicating you are receiving psychotherapy twice a week (no records submitted of therapy sessions). The American Psychiatric Foundation Return to Work Taskforce guidelines state psychiatric inability to work is a crisis requiring intensive treatment to restore function. The standard of care for an individual who is impaired by a

---

[1] We "may consider . . . exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). Accordingly, we consider the disability insurance policy and the various letters that Lincoln sent to Lowe, which are referred to in the complaint, are central to Lowe's claims, and are appended to Lincoln's motion to dismiss.

psychological condition is weekly to biweekly psychotherapy in addition to monthly psychiatric contacts.

R. 8-1 (Defs.' Mot. to Dismiss, Ex. A (Ex. 2)) (Page ID #93). According to Lowe, "[w]hen [she] learned that a main source of her income was going to be stripped away, [her] ailments attributed to the stroke on May 23, 2016 worsened and [she] suffered severe and extreme physical and emotional injuries." R. 7 (Am. Compl. ¶ 23) (Page ID #27). Despite numerous requests by Lowe that Lincoln produce the referenced guidelines by the "American Psychiatric Foundation Return to Work Taskforce," Lincoln failed to produce them. R. 7 (Am. Compl. ¶ 19) (Page ID #27). On October 22, 2018, a claims specialist for Lincoln "admitted that to his knowledge there is no such report." *Id.* ¶ 20 (Page ID #27). Lowe appealed Lincoln's termination of benefits, and ultimately Lincoln reversed its prior decision and paid Lowe the claimed benefits. R. 8-1 (Defs.' Mot. to Dismiss, Ex. A (Ex. 3 at 1, Ex. 4 at 1)) (Page ID #96, 104).[2]

On March 29, 2019, Lowe filed suit in the U.S. District Court for the Eastern District of Kentucky, alleging five violations of state law by Lincoln.[3] R. 1 (Compl. ¶¶ 24–56) (Page ID #4–

---

[2]*See supra* note 1. Lowe does not dispute—and in fact relies upon—the fact that she was ultimately paid these benefits. *See* R. 10 (Opp. to Mot. to Dismiss at 3) (Page ID #114) ("After suit was filed, Defendants have paid Plaintiff's due benefits under the terms of her insurance policy."); Appellant Br. at 7 ("Ironically, after being caught red-handed engaging in dishonest and deceptive conduct, soon after the filing of the Complaint, in April of 2019, Ms. Lowe's her [sic] request for long term disability benefits was granted by Lincoln. (Motion to Dismiss, RE 8-1, Page ID #63-64)."); *id.* at 16 (noting that "there is no question Ms. Lowe ultimately received the benefits to which she was entitled").

[3]The district court had subject-matter jurisdiction to hear the case based on diversity of citizenship. Lowe is a citizen of Kentucky, Lincoln National Life Insurance Company is an Indiana corporation with its principal place of business in Indiana, and Lincoln National Corporation is an Indiana corporation with its principal place of business in Pennsylvania. R. 7 (Am. Compl. ¶¶ 1–3) (Page ID #25–26). Diversity of citizenship therefore exists between the

7). She amended her complaint on May 9, 2019, adding two state-law counts. R. 7 (Am. Compl. ¶¶ 57–67) (Page ID #31–32). On June 12, 2019, Lincoln moved to dismiss Lowe's complaint, arguing that her claims were preempted by the Employee Retirement Income Security Act ("ERISA"). R. 8 (Defs.' Mot. to Dismiss at 1) (Page ID #34). In the alternative, Lincoln requested that the district court enter summary judgment in its favor. *Id.* On October 3, 2019, the district court sustained Lincoln's motion, concluding that "Plaintiff[']s claims fall squarely within the scope of [29 U.S.C.] § 1132(a)(1)(B) and are preempted by ERISA." *Lowe v. Lincoln Nat'l Life Ins. Co.*, No. CV 19-31-HRW, 2019 WL 4891041, at *3 (E.D. Ky. Oct. 3, 2019). Lowe timely appealed the district court's judgment. R. 15 (Notice of Appeal) (Page ID #137).

## II. STANDARD OF REVIEW

"We review de novo the district court's ruling on a motion to dismiss a claim." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). "A claim survives such a motion if its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" *Id.* (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* (alterations in original) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

---

parties, and Lowe alleges that she seeks damages in excess of the jurisdictional minimum, which Lincoln does not contest, *see id.* ¶ 4 (Page ID #26).

## III. DISCUSSION

"There are two forms of ERISA preemption: express preemption (which applies broadly) and complete preemption (which applies narrowly)." *K.B. ex rel. Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019). The latter "is more aptly described as a 'jurisdictional' doctrine." *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Loffredo v. Daimler AG*, 500 F. App'x 491, 500 (6th Cir. 2012) (opinion of Moore, J.)). The "quagmire that is [ERISA] preemption," *Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 553 (6th Cir. 2016), most often involves consideration of the doctrine of complete preemption. Specifically, the typical case comes to this court after (1) a plaintiff has filed a lawsuit in state court and (2) a defendant has removed the case to federal court, asserting that the plaintiff's claims are preempted by ERISA. *See, e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 462 (6th Cir. 2002); *Gardner v. Heartland Indus. Partners*, LP, 715 F.3d 609, 612 (6th Cir. 2013); *Hogan*, 823 F.3d at 877; *Milby v. MCMC LLC*, 844 F.3d 605, 608 (6th Cir. 2016); *Arora v. Henry Ford Health Sys.*, No. 17-2252, 2018 WL 3760888, at *1 (6th Cir. July 9, 2018) (order); *K.B.*, 929 F.3d at 798.

Here, by contrast, Lowe filed suit in federal court based on diversity jurisdiction, and Lincoln makes its ERISA-preemption argument not as a means of defending removal, but as a means of dismissing the action. Jurisdiction thus does not turn on the success or failure of Lincoln's complete-preemption arguments. Although complete preemption, beyond its "jurisdictional impact," can "affect[] how the federal court should treat [the plaintiff's] claim," *Loffredo*, 500 F. App'x at 500 (opinion of Moore, J.), analysis of complete preemption would be moot in this case if we determine that Lowe's claims are expressly preempted. If express

preemption applies, the state-law claims "should be dismissed with prejudice." *Id.* at 501. Thus, we turn first to the question of express preemption under ERISA.

ERISA's express-preemption clause preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). By itself, the phrase "relate to" does not tell us much. As the Supreme Court has recognized, "uncritical literalism" would arise "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–56 (1995). Even the Court's explanation that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983), did not clarify the "amorphous nature of the phrase 'relate to.'" *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006). We subsequently added that the express-preemption inquiry should "consider the kind of relief that plaintiffs[] seek, and its relation to the pension plan." *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005). Finally, in *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) ("*PONI*"), we set forth three specific classes of state laws that were preempted by ERISA:

> ERISA preempts state laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself."

*Id.* (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). Depending on the case, this analysis may consider whether the state law itself is preempted by ERISA, or

6

"whether a state-law *claim* relates to plans covered by ERISA." *Briscoe*, 444 F.3d at 497 (emphasis added).

We have little difficulty concluding that Lowe's amended complaint improperly challenges the manner in which Lincoln administered the plan and seeks damages through an "alternate enforcement mechanism[]" outside ERISA. *PONI*, 399 F.3d at 698 (citation omitted). The crux of Lowe's argument is that she is not suing Lincoln for denying her benefits, but for its independent tortious conduct, namely concocting a fake study, which itself caused her actionable emotional distress and pecuniary loss. Yet we have held previously that a claim of intentional infliction of emotional distress which arises out of the refusal to pay benefits under an ERISA plan is one that relates to the plan and is preempted. *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220, 224–25 (6th Cir. 1994). The fact that Lowe does not explicitly state in the complaint that she aims to recover plan benefits does not change the essentially administrative nature of her claims. *See Loffredo*, 500 F. App'x at 502 (opinion of Moore, J.) ("By seeking to hold the defendants liable for conduct that allegedly resulted in lost benefits without challenging the denial of benefits itself, Loffredo is attempting to create an 'alternate enforcement mechanism' to ERISA's vehicle for recovery of benefits such that the claim is expressly preempted under § 1144.") (quoting *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007)).

Lowe urges us to rely on the Ninth Circuit's analysis in *Dishman v. UNUM Life Insurance Co. of America*, 269 F.3d 974 (9th Cir. 2001), but we would resolve this case the same way even if bound by that decision. In *Dishman*, the plaintiff alleged

> that an investigator retained by UNUM [Life Insurance Company of America] elicited information about his employment status by falsely claiming to be a bank loan officer endeavoring to verify information he had supplied; that investigators elicited personal information about him from neighbors and acquaintances by

representing that he had volunteered to coach a basketball team; that investigators sought and obtained personal credit card information and travel itineraries by impersonating him; that investigators falsely identified themselves when caught photographing his residence; and that investigators repeatedly called his residence and either hung up or else dunned the person answering for information about him.

*Id.* at 979–80. UNUM argued that "but for" its ERISA-covered relationship with the plaintiff, it "would have had no need to investigate Dishman's claim of disability," and that his claim therefore "related to" his employee benefits plan. *Id.* at 983. The Ninth Circuit rejected this argument, reasoning that "the objective of Congress in crafting Section 1144(a) was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Id.* at 984. The court contrasted Dishman's complaint with another case in which "[t]he harm [the plaintiffs] suffered was inextricably intertwined with the plan's decision not to pay." *Id.* at 983. "[Dishman's] damages for invasion of privacy remain whether or not UNUM ultimately pays his claim." *Id.*

Lowe has simply made no allegations that approach the level of independent tortious conduct alleged in *Dishman*. The sole act that, in her view, constitutes negligence, negligent infliction of emotional distress, outrage, fraudulent misrepresentation, a violation of the Kentucky Consumer Protection Act, bad faith, and a violation of the Kentucky Unfair Claims Settlement Practices Act was Lincoln's citation of a fictitious study in the course of denying her benefits. According to the amended complaint, her "ailments attributed to the stroke . . . worsened" and she "suffered severe and extreme physical and emotional injuries" not when she was the victim of tortious conduct but "[w]hen [she] learned that a main source of her income was going to be stripped away." R. 7 (Am. Compl. ¶ 23) (Page ID #27). The amended complaint lacks any allegation of how the specific act of mentioning or relying on the fictitious study was itself a cause

of harm. Instead, as the district court recognized, the allegations in the amended complaint's various counts are "based upon Lincoln's allegedly wrongful denial of benefits." *Lowe,* 2019 WL 4891041, at *3. Or, in *Dishman*'s terms, the allegedly tortious conduct was "inextricably intertwined with the plan's decision not to pay." 269 F.3d at 983. We cannot conclude that "the alleged conduct by the fiduciary is 'entirely unrelated to and outside the scope of [the fiduciary's] duties under the plan or in carrying out the terms of the plan.'" *PONI*, 399 F.3d at 699 (alteration in original) (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 193 (4th Cir. 2002)). Instead, "[a]ll of [Lowe]'s state-law claims stem from the actions of [Lincoln] in the processing of her claim for benefits," and "[i]t is well established that such state-law tort . . . claims are preempted by ERISA." *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002).

There is one aspect of this case that appears to distinguish it from the many others in which we have held that a plaintiff's claims are related to an employee benefits plan, and thus expressly preempted by ERISA: Lowe ultimately received all of the benefits that she claimed were owed to her, albeit after filing this lawsuit. It would thus be erroneous to regard Lowe, at present, as seeking unpaid benefits. *Cf. Loffredo*, 500 F. App'x at 494 (opinion of Sutton, J.) (plaintiffs "lost most of their benefits" and accordingly brought multiple state-law claims). We could not conclude, however, that the applicability of express preemption under ERISA hinges on whether, outside the four corners of the plaintiff's complaint, the defendant fulfilled an open claim for benefits. The fact that Lincoln paid Lowe her benefits and that Lowe did not drop her lawsuit cannot make it more likely that, as a matter of law, her tort claims are independent of her original grievance over denied benefits with Lincoln. If Lowe wished to hold Lincoln accountable for a breach of its fiduciary duties under ERISA, filing a claim under that statute was the proper course of action.

***

The district court granted Lincoln's motion to dismiss, or in the alternative, for summary judgment by concluding that Lowe's claims "fall squarely within the scope of § 1132(a)(1)(B) and are preempted by ERISA." *Lowe,* 2019 WL 4891041, at *3. But "[c]omplete preemption under § 1132(a) is not grounds for dismissal." *Loffredo*, 500 F. App'x at 501 (opinion of Moore, J.). Instead, for the foregoing reasons, we conclude that Lowe's state-law claims are expressly preempted by ERISA under 29 U.S.C. § 1144(a), and on that basis we **AFFIRM** the judgment of the district court.