**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| RANDY RUDEL,<br>*Plaintiff-Appellee/<br>Cross-Appellant*,<br><br>v.<br><br>HAWAI'I MANAGEMENT ALLIANCE<br>ASSOCIATION,<br>*Defendant-Appellant/<br>Cross-Appellee.* | Nos. 17-17395<br>17-17460<br><br>D.C. No.<br>1:15-cv-00539-<br>JMS-RLP<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Hawai'i
J. Michael Seabright, Chief District Judge, Presiding

Argued and Submitted June 12, 2019
Honolulu, Hawai'i

Filed September 11, 2019

Before: Sidney R. Thomas, Chief Judge, and Consuelo M.
Callahan and Morgan Christen, Circuit Judges.

Opinion by Chief Judge Thomas

## SUMMARY[*]

### ERISA / Preemption

The panel affirmed the district court's judgment holding that two Hawaii statutes restricting health insurers' subrogation recovery rights were saved from preemption under the Employee Retirement Income Security Act and provided the relevant rule of decision in a federal ERISA action to determine the validity of an insurer's lien on tort settlement proceeds.

The insurer paid health insurance benefits under an ERISA plan for plaintiff's medical care after a vehicle accident. Plaintiff also received a payment in a tort settlement for general damages. The insurer asserted a right to a portion of the tort settlement, and placed a lien, under a reimbursement provision of the ERISA plan.

The Hawaii statutes prohibited insurance providers from seeking reimbursement for general damages from third-party settlements. They thus contradicted the terms of the ERISA plan, which provided that the insurer could be reimbursed for general damages.

Plaintiff filed suit in state court, and the insurer removed the case to federal court. The district court denied plaintiff's motion for a remand and granted partial summary judgment in favor of plaintiff.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that, under ERISA § 502, asserted remedies and causes of action that conflict with ERISA's civil enforcement scheme are deemed preempted. When a claim is removed from state to federal court, the state law claim is reconfigured as a federal ERISA cause of action. ERISA § 514 expressly preempts state laws that relate to any employee benefit plan but saves from preemption any state law that regulates insurance, banking, or securities. If a case is properly before a federal court under § 502, then a state statute that is saved from preemption under § 514 and does not conflict with § 502, can supply the relevant rule of decision.

The panel held that § 502(a) completely preempted the Hawaii statutes, allowing the case to be removed to federal court. The panel concluded that plaintiff could have brought his claim under § 502(a) because, in substance, the claim was one to recover benefits or to clarify his rights to benefits pursuant to the ERISA plan. Joining the Third, Fourth, and Fifth Circuits, the panel held that challenges to a plan's right to reimbursement are properly characterized as § 502(a) claims. The panel also concluded that no other independent legal duties were implicated by the insurer's actions. Accordingly, plaintiff's state law claims were completely preempted, and the district court properly denied his remand motion.

The panel held that the Hawaii statutes related to an employee benefit plan but were saved from express preemption under § 514 because they regulated insurance. The panel concluded that the Hawaii statutes were specifically directed toward entities engaged in insurance and substantially affected the risk pooling arrangement between the insurer and the insured.

The panel held that the Hawaii statutes provided the rule of decision for the newly reconfigured federal ERISA action because the statutes did not impermissibly expand the scope of liability under § 502(a). The panel concluded that the Hawaii statutes operated to define the scope of a benefit provided by the ERISA plan and did not create additional remedies not permitted by ERISA. Thus, the Hawaii statutes were not conflict preempted and could provide the rule of decision.

## COUNSEL

Jordan J. Kimura (argued) and David J. Minkin, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawai'i; Clarissa A. Kang and Angel L. Garrett, Trucker Huss, San Francisco, California; for Defendant-Appellant/Cross-Appellee.

Allen K. Williams (argued), Trecker Fritz & Williams, Honolulu, Hawai'i; Woodruff K. Soldner, Michael R. Cruise, and R. Aaron Creps, Leavitt Yamane & Soldner, Honolulu, Hawai'i; for Plaintiff-Appellee/Cross-Appellant.

Dianne Winter Brookins (argued) and Jasmine M. Fisher, Alston Hunt Floyd & Ing, Honolulu, Hawai'i, for Amicus Curiae Hawai'i Medical Service Association.

Kate S. O'Scannlain, Solicitor of Labor; G. William Scott, Associate Solicitor for Plan Benefits Security; Thomas Tso, Counsel for Appellate and Special Litigation; Kira Hettinger, Trial Attorney; United States Department of Labor, Office of the Solicitor, Plan Benefits Security Division, Washington, D.C., for Amicus Curiae R. Alexander Acosta, Secretary of Labor.

**OPINION**

THOMAS, Chief Judge:

In this case, we consider whether two Hawai'i statutes restricting health insurers' subrogation recovery rights are saved from preemption under the Employee Retirement Income Security Act of 1974 ("ERISA") and, if so, whether the statutes provide a relevant rule of decision in a federal ERISA action to determine the validity of the insurer's lien on tort settlement proceeds.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's decisions regarding preemption. *Winterrowd v. Am.Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003). We affirm the judgment of the district court, which held that the statutes were saved from preemption and provided the relevant rule of decision.

I

While riding his motorcycle home from work, Randy Rudel was hit by a vehicle making an allegedly illegal left turn. As a result of the accident, Rudel sustained numerous severe injuries, including partial amputations of his left leg and left forearm. Rudel had health insurance benefits for his medical care from the Hawai'i Medical Alliance Association ("HMAA") pursuant to an employee benefit plan governed by ERISA ("the Plan"). In total, HMAA paid $400,779.70 for medical expenses.[1]

---

[1] HMAA paid these benefits as the result of a lawsuit brought by Rudel, in which he asserted that HMAA refused to pay his expenses because he declined to sign a "Reimbursement Agreement" that would

In addition to the money paid by HMAA, Rudel also received a payment totaling $1.5 million in a tort settlement with the driver of the vehicle that struck him. The tort settlement agreement stipulated that the payment was for "general damages" including medical expenses and emotional distress, and did not include special damages such as those that would "duplicate medical payments, no-fault payments, wage loss, [or] temporary disability benefits."

HMAA asserted a right to a portion of the tort settlement proceeds under the Plan, which provided to HMAA the "right to be reimbursed for any benefits [it] provide[s], from any recovery received from . . . any third party or other source of recovery" including "general damages" from third-party settlements. As Rudel's settlements was for such general damages, HMAA placed a lien for $400,779.70 on Rudel's tort settlement.

Two Hawai‘i state statutes (collectively, "the Hawai‘i Statutes") posed obstacles to HMAA's ability to recover: Hawai‘i Revised Statutes ("HRS") §§ 431:13-103(a)(10) and 663-10. Read together, these statutes prohibit insurance providers from seeking reimbursement for general damages from third-party settlements. They do, however, permit special damages to be reimbursed if a state court determines the lien to be valid, pursuant to the statutory terms.[2] Thus, the

_____

have required him to agree to repay HMAA from any recovery gained from a third party. HMAA eventually waived this requirement and paid the benefits, leading to the dismissal of the case.

[2] Under Hawai‘i law, "[s]pecial damages are often considered to be synonymous with pecuniary loss and include such items as medical and hospital expenses, loss of earnings, and diminished capacity to work." *Dunbar v. Thompson*, 901 P.2d 1285, 1294 (Haw. App. 1995).

Hawaiʻi Statutes directly contradict the terms of the Plan, which provided that the insurer could be reimbursed for general damages.

Specifically, Haw. Rev. Stat. § 431:13-103 is a provision of the Hawaiʻi insurance code that defines unfair methods of competition and unfair or deceptive acts or practices. Haw. Rev. Stat. § 431:13-103(a). Section 431:13-103(a)(10) defines one such unfair practice in the business of insurance as:

> Refusing to provide or limiting coverage available to an individual because the individual may have a third-party claim for recovery of damages; provided that:
>
> (A) Where damages are recovered by judgment or settlement of a third-party claim, reimbursement of past benefits paid shall be allowed pursuant to section 663-10.

*Id.*

Section 663-10(a), which is referenced in § 431:13-103(a)(10), establishes the procedure for determining if and when reimbursement can be permitted. Importantly, § 663-10 does not permit reimbursement for general damages—it only permits reimbursement for special damages. It reads:

> In any civil action in tort, *the court*, before any judgment or stipulation to dismiss the action is approved, s*hall determine the validity of any claim of a lien against the amount of the judgment or settlement by any*

*person who files timely notice of the claim to the court or to the parties in the action.* The judgment entered, or the order subsequent to settlement, shall include a statement of the amounts, if any, due and owing to any person determined by the court to be a holder of a valid lien and to be paid to the lienholder out of the amount of the corresponding *special damages* recovered by the judgment or settlement. . . .  As used in this section, lien means a lien arising out of a claim for payments made or indemnified from collateral sources, including health insurance or benefits, for costs and expenses arising out of the injury which is the subject of the civil action in tort. If there is a settlement before suit is filed or there is no civil action pending, then any party may petition a court of competent jurisdiction for a determination of the validity and amount of any claim of a lien.

Haw. Rev. Stat. § 663-10(a) (emphasis added).

In state court, Rudel filed an action asserting that the Hawai'i Statutes nullified the inapposite terms of the Plan so as to prevent HMAA from seeking reimbursement.  Pursuant to the Hawai'i Statutes, he filed a petition for determination of validity of HMAA's lien in Hawai'i Circuit Court of the Third Circuit.  There, he argued that, because his third-party settlement paid only general damages and because the Hawai'i Statutes only permit reimbursement for special damages, HMAA was not entitled to reimbursement.  HMAA contended that the state statutes were irrelevant to any claims for reimbursement because the Plan was governed by ERISA,

which preempts the Hawai'i Statutes and leaves the Plan terms to determine its subrogation rights.

HMAA then removed the case to the District of Hawai'i. Rudel moved for remand, arguing that his action implicated only state law because he sought only "to *keep* benefits already provided by HMAA" rather than to "recover benefits under the terms of the Plan."

The district court denied Rudel's remand motion, holding that Rudel's claim belonged in federal court because, in substance, he did not possess the benefits free and clear of HMAA's lien. Thus, for purposes of federal jurisdiction, the action remained one "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits" under ERISA § 502(a)(1)(B).

Rudel then filed a motion for determination of validity of HMAA's lien pursuant to the Hawai'i Statutes. In response, HMAA filed a motion for summary judgment, arguing that Rudel's action was preempted by ERISA so that the Plan provisions governed, and its lien was thus valid.

In a detailed order, the district court denied HMAA's motion for summary judgment and granted, in part, Rudel's motion. The district court held that the Hawai'i Statutes were saved from preemption under ERISA § 514, and that § 514 also provided the relevant rule of decision. The court ordered that further proceedings were required to determine the validity and amount of the lien under the Hawai'i Statutes. However, the parties stipulated that if the Hawai'i Statutes provided the relevant rule of decision, HMAA had no valid lien claim.

HMAA timely appealed the district court order.**[3]**  Rudel timely cross-appealed on the issue of whether the district court erred in denying his initial motion for remand.

II

This appeal turns on the application and interplay of two ERISA statutes implicating preemption of claims: § 502 (codified at 29 U.S.C. § 1132) and § 514 (codified at 29 U.S.C. § 1144).  These "two strands to ERISA's powerful preemptive force," *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) differ in their purpose and function.

Section 502 sets forth "a comprehensive scheme of civil remedies to enforce ERISA's provisions." *Id.*  Section 502's purpose is to ensure that federal courts remain the sole forum and the sole vehicle for adjudicating claims for benefits under ERISA.  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).  Asserted remedies and causes of action that conflict with with ERISA's civil enforcement scheme are deemed preempted.  If, through the application of § 502(a), a state law claim asserted in state court is completely preempted, then the state action may be removed to federal court.  Federal jurisdiction exists under § 502(a) if: (1) the individual could have brought his claim under this ERISA provision; and (2) no other independent

---

**[3]** The Hawai'i Medical Service Association ("HMSA"), a health care insurer in the State of Hawai'i, filed an amicus curiae brief in support of HMAA's position.  The Secretary of Labor filed an amicus curiae brief in support of neither party and requesting affirmance of the district court's denial of Rudel's motion for remand and of the district court's denial of HMAA's motion for summary judgment.

legal duties are implicated by the defendant's actions. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  When a claim is removed to federal court, the state law claim is reconfigured as a federal ERISA cause of action under § 502(a).  Then, an analysis is undertaken to examine whether the transformed cause of action conflicts with ERISA.  If so, it is preempted.  If not, it remains viable as a federal ERISA cause of action.

Section 514 contains ERISA's express preemption provision.  It expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a).  However, § 514 saves from preemption "any law of any State which regulates insurance, banking, or securities."     29 U.S.C. § 1144(b)(2)(A).  The saving clause functions to preserve a state's traditional regulatory power over insurance, banking, and securities.  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).  Section 514, however, does not confer federal jurisdiction.  *Marin Gen. Hosp.*, 581 F.3d at 945.

If a case is properly before a federal court under § 502, a state statute that is saved from preemption under § 514, and that does not conflict with § 502, can  "suppl[y] the relevant rule of decision."  *UNUM Life Ins. Co.of Am. v. Ward*, 526 U.S. 358, 377 (1999).  Put another way, a statute saved from express preemption under § 514 can—in some circumstances—provide the rule of law used by a federal court to decide a claim for the recovery, enforcement, or clarification of benefits in an action removed pursuant to § 502(a).

In sum, our task is to ascertain whether: (1) § 502(a) completely preempted the Hawai'i Statutes, allowing the case

to be removed to federal court, (2) the Hawai'i Statutes are saved from preemption pursuant to § 514, and (3) the Hawai'i Statutes provide the rule of decision for the newly reconfigured federal ERISA action.

With those general principles in mind, we turn to a more detailed analysis of the issues.

III

We first examine whether the district court properly exercised federal jurisdiction over Rudel's state law claims under § 502(a). "Ordinarily, federal question jurisdiction does not lie where a defendant contends that a state-law claim is preempted under federal law." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011). However, if a federal cause of action completely preempts a state law claim, then the action "necessarily arises under federal law." *Beneficial Nat'l. Bank v. Anderson*, 539 U.S. 1, 10 (2003). The complete preemption doctrine applies "where the preemptive force of federal law is so 'extraordinary' that it converts state common law claims into claims arising under federal law for the purposes of jurisdiction." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011) (quoting *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993)).

The complete preemption doctrine "prevent[s] a plaintiff from avoiding a federal forum when Congress has created a federal cause of action with the intent that it provide the exclusive remedy for the particular grievance alleged by the plaintiff." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057–58 (9th Cir. 2018) (quoting Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 TEX. L.

REV. 1781, 1785 (1998)).    Therefore, when complete preemption exists, the state law action may be removed to federal court. *Fossen*, 660 F.3d at 1107.

When complete preemption applies, "a state-law claim ceases to exist[,]" *Hansen*, 902 F.3d at 1058, because, upon removal to federal court, "the state-law claim is simply 'recharacterized' as the federal claim that Congress made exclusive." *Id.* (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)).[4]

As we have noted, § 502 "'set[s] forth a comprehensive civil enforcement scheme' that completely preempts state-law 'causes of action within the scope of th[es]e civil enforcement provisions.'"    *Fossen*, 660 F.3d at 1107 (alterations in original) (quoting *Davila*, 542 U.S. at 208–09)).  Thus, § 502 dictates whether a federal court can exercise jurisdiction over a particular claim for benefits. *Marin Gen. Hosp.*, 581 F.3d at 945.  According to its terms, an action "to recover benefits due . . . under the terms of [a] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits," 29 U.S.C. § 1132(a)(1)(B), will be heard in a federal court.

Federal jurisdiction exists under § 502(a) if: (1) the individual could have brought his claim under this ERISA provision; and (2) no other independent legal duties are implicated by the defendant's actions. *Davila*, 542 U.S. at 210.  In determining whether a petitioner could have brought

---

[4] Specifically, upon removal, the district court has the option to "treat the artfully pleaded claim for all purposes as the correct federal claim, or else dismiss it with leave to formally replead the claim under federal law." *Hansen*, 902 F.3d at 1058.

his claim under ERISA § 502(a)(1)(B), we examine the substance of the claim, rather than its form. *Id*. at 214.

## A

*Davila*'s first requirement asks whether Rudel could have brought his claims under ERISA § 502(a). We agree with the Secretary of Labor's position that the district court correctly held that he could because, in substance, Rudel's claim was one to recover benefits or to clarify his rights to benefits pursuant to the Plan. *See* 29 U.S.C. § 1132(a)(1)(B). HMAA's lien on Rudel's tort settlement jeopardized his ability to retain the benefits HMAA had previously paid; indeed, had HMAA been successful in its claim for reimbursement, Rudel would have had to pay back the $400,779.70 he originally received from HMAA. In this way, the substance of Rudel's claim could be restated as "Rudel has not fully 'recovered [the benefits] because [he] has not obtained the benefits free and clear of [HMAA's] claims.'" *Noetzel v. Hawai'i Med. Serv. Ass'n*, 183 F. Supp. 3d 1094, 1103 (D. Haw. 2016). Thus, his action properly could be characterized as a § 502(a) action that "seeks to determine his entitlement to retain the benefits based on the terms of the plan." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (en banc).

In reaching the conclusion that challenges to a plan's right to reimbursement are properly characterized as § 502(a) claims, we join the Third, Fourth, and Fifth Circuits. *Id.*; *see also Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005) (holding that a claim premised on unlawful reimbursement requirements was preempted by § 502 because it was a "claim for 'benefits due'" under the terms of a plan); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d

278, 291 (4th Cir. 2003) (characterizing reimbursement as a § 502 claim to ensure that benefits are not "diminished by [a] payment" to insurers).**[5]**

B

Satisfying *Davila*'s second requirement requires there be no legal duty implicated by the defendant's actions independent from a duty to provide benefits pursuant to § 502. *Davila*, 542 U.S. at 210. The district court determined that no independent legal duties were implicated by HMAA's actions, and we agree.

Here, any legal duty HMAA had to provide Rudel with benefits is dependent on the amount owed and paid pursuant to the Plan. Without the Plan obligating HMAA to pay medical expenses, Rudel would be unable to claim that HMAA was not entitled to reimbursement because Rudel would not have received any money in the first place. Thus, Rudel's assertions that the Hawai'i Statutes provide an independent legal duty prove unavailing.

In addition, § 663-10 permits "any person who files timely notice of the claim to the court" to have the validity of an insurer's lien determined by a court. Haw. Rev. Stat. § 663-10. By its own permissive terms, the statute *permits*,

---

**[5]** The Second Circuit has held to the contrary. *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 242 (2d Cir. 2014). It reasoned that because the claims at issue were saved from preemption under § 514, they could not be completely preempted under § 502, and federal jurisdiction did not exist. However, that theory is inconsistent with our precedent holding that "[p]reemption under ERISA section 502(a) is not affected by [§ 514.]" *Cleghorn*, 408 F.3d at 1226 n.6. And we find the reasoning of the other Circuits persuasive.

but does not obligate, a claimant to ask a court to determine the validity of a lien.  The Hawai'i Statutes do not impose any legal duty upon a plan administrator like HMAA.

Thus, both *Davila*'s requirements are satisfied. Therefore, Rudel's state law claims were completely preempted for purposes of jurisdiction by § 502, and the district court properly denied Rudel's remand motion.

IV

Given that the district court properly exercised federal jurisdiction, we must determine whether the Hawai'i Statutes are preempted by ERISA, or whether they are saved from preemption and provide the relevant rule of decision.  There are two types of ERISA preemption:  (1) express preemption under § 514 and (2) preemption due to conflict with ERISA's civil remedial scheme under § 502.  *Fossen*, 660 F.3d at 1107.

A

We first address preemption under § 514, which also contains ERISA's "saving clause."  Section 514 expressly preempts any and all state laws insofar as they may "now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  However, § 514 saves from preemption "any law of any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).

There is no doubt that the Hawai'i Statutes relate to an employee benefit plan, so the only question is whether they are saved from preemption under § 514 because they regulate insurance.  To determine that, we ask whether the law: (1) is

"specifically directed toward entities engaged in insurance;" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 693 (9th Cir. 2017) (quoting *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003)).

1

The district court properly held that the Hawaiʻi Statutes are "specifically directed toward entities engaged in insurance." *See id.* Under ERISA, "[a] law is specifically directed toward entities engaged in insurance if it is 'grounded in policy concerns specific to the insurance industry.'" *Id.* (quoting *UNUM Life Ins. Co.*, 526 U.S. at 372). "It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies." *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009).

There is no doubt that § 431:13-103 regulates insurance, given that it is embedded in the insurance code and regulates the extent to which insurers may limit insurance coverage.

Section 663-10, however, is a general statute for determination of civil remedies. Haw. Rev. Stat. § 663-10. Thus, the question is whether § 663-10 and § 431:13-103 should be read together as laws that regulate insurance, or whether they are completely independent statutory provisions.

Employing the familiar tools of statutory interpretation, we begin with the plain language of the statute, reading the words in the context of the overall statutory scheme. *Rainero*

*v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016). Here, § 431:13-103 expressly cross-references § 663-10, providing in relevant part that "[w]here damages 'are recovered by judgment or settlement of a third-party claim, reimbursement of past benefits paid shall be allowed pursuant to section 663-10.'" Haw. Rev. Stat. § 431:13-103. Thus, the plain statutory text demonstrates that § 663-10, insofar as it affects insurance subrogation rights, must be read in conjunction with § 431:13-103.

The legislative history buttresses the conclusion that the two statutes were intended to work in tandem as to insurance claims. The Hawai'i legislature enacted § 663-10 in 1986 to allow health insurers to seek reimbursement for special damages recovered in a judgment or settlement that duplicated the amounts already paid, thereby prohibiting double recovery. *See Yukumoto v. Tawarahara*, 400 P.3d 486, 497 (Haw. 2017). But in 2000, the Hawai'i legislature decided to limit this right to reimbursement and subrogation. To do so, it passed S.B. No. 2563, "the purpose of which was to 'make it an unfair or deceptive act to limit or withhold coverage under insurance policies because a consumer may have a third-party claim for damages.'" *Id.* (quoting H. Stand. Comm. Rep. No. 1330-00, in Haw. H. J., at 1515 (Haw. 2000)). In order to create a "fair, uniform and comprehensive procedure" that would govern reimbursements related to third-party recoveries, the legislature amended § 663-10 to expressly include "health insurance or benefits." *Id.*

This amendment, however, brought about the unforeseen consequence of exempting health insurance providers from the prohibition of unfair practices outlined in the new statute, thus permitting them to refuse to provide or to limit coverage

to insured individuals with a third-party claim.  *See id.* at 498; *see also* S. Stand. Comm. Rep. No. 107, in Haw. S. J., at 987 (Haw. 2001).   To correct this "oversight," the legislature enacted S.B. 940, which clarified that:

> Refusing to provide or limiting health coverage to persons who have third-party claims for damages is not permitted, except for reimbursement under section 663-10 [HRS].  This measure makes such acts unfair insurance practices under [§ 431:13-103] to eliminate any doubt that health insurers have always been subject to these limitations under section 663-10, HRS.

*Id.* at 499 (quoting Conf. Comm. Rep. No. 67-02, in Haw. H. J., at 1783 (Haw. 2002)).

This language, as well as the fact that § 431:13-103 explicitly incorporates § 663-10, leaves no doubt that the Hawai'i Statutes must be read together.   Indeed, under Hawai'i law, "HRS §§ 663-10 and 431-13:103(a)(10) *comprehensively* address[] and limit[] a health insurers' rights to reimbursement and subrogation."   *Id.* (emphasis added).

Because the statutes must be read together, HMAA's argument that § 663-10 cannot regulate insurance is not persuasive.   HMAA relies on the Third Circuit's opinion in *Levine*, where the court held that even though a statute's "legislative history . . . indicate[d] an intent to lighten the burden on the liability insurance industry," the "plain language of the statute"—which stated that the statute applied to "any civil action"—controlled.  402 F.3d at 165 (emphasis omitted).

The Hawai'i Statutes, however, are easily distinguished from the statute at issue in *Levine* because, in *Levine*, there was only one statute at issue—one that did not regulate insurance.   *Id.* at 164 & n.9.   Here, § 431:13-103 unquestionably regulates insurance, and expressly incorporates § 663-10's methodology for determining when health insurance reimbursements will be permitted.   Read together, the terms of the Hawai'i Statutes regulate the insurance industry.

HMAA still urges us to read § 663-10 in isolation, however, because there is no private right of action to bring a claim under § 431:13-103.   *See also* Haw. Rev. Stat. § 431:13-107 (noting that all remedies and proceedings in the insurance code "are to be invoked solely and exclusively by the commissioner").   It argues that Rudel's action for a lien determination was, by default, a private claim under § 663-10, rendering § 431:13-103 irrelevant to the determination whether the statutes are specifically directed toward insurance.

This argument is unpersuasive for two reasons.   First, it is premised on a belief that Rudel brought his action under § 663-10.   To the contrary, once the case was removed to district court pursuant to § 502(a), the court considered Rudel's claim as a § 502(a) action for benefits; in effect, Rudel's claim was brought under § 502(a), not § 663-10. Second, HMAA again assumes that the Hawai'i Statutes can be read separately.   As discussed, this bifurcated view ignores the comprehensive scheme demanded by Hawai'i law.

Thus, the district court properly held that §§ 431-13:103(a) and 663-10 are   "specifically directed toward entities engaged in insurance."

2

The next question is whether the Hawai'i Statutes substantially affect the risk pooling arrangement between the insurer and the insured.  A state statute substantially affects the risk pooling arrangement between the insurer and the insured when it impacts the terms by which insurance providers must pay plan members.  *See Morrison*, 584 F.3d at 844–45.  This requirement "ensures that [statutes] are targeted at insurance practices, not merely at insurance companies."  *Id.* at 844 (noting that a statute that mandates the salary of an insurance company employee would not affect risk pooling because it is not directed at insurance practices).

The district court properly concluded that the Hawai'i Statutes substantially affect risk pooling.  Read together, §§ 431-13:103(a) and 663-10 prohibit an insurer from seeking certain types of reimbursement, thus impacting the eventual net value of any payment made to a plan member—in other words, due to the Hawai'i Statutes, the insurers face more risk than they would otherwise.  *See Singh*, 335 F.3d at 286 (analyzing a similar antisubrogation scheme and noting that "it is difficult to imagine an antisubrogation law of this type as anything other than an insurance regulation, as it addresses who pays in a given set of circumstances and is therefore directed at spreading policyholder risk").

3

In sum, the district court correctly concluded that the Hawai'i Statutes are saved from express preemption under § 514 because they are directed at insurance practices and impact risk pooling.

B

Having concluded that the statutes are saved from preemption under § 514, we must determine whether the Hawai'i Statutes supply the rule of decision for Rudel's reconfigured federal ERISA claim.  A state statute may provide a relevant rule of decision in an ERISA action if: (1) it is saved from preemption under § 514; and (2) it does not impermissibly expand the scope of liability outlined in § 502(a).  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365–81 (2002);  *Singh*, 335 F.3d at 282–83.

1

Given that the Hawai'i Statutes are saved from preemption, the only remaining question is whether the statutes impermissibly expand the scope of liability under § 502(a).  This requirement is founded squarely in the statute and in ERISA's comprehensive civil enforcement scheme.  Under that rubric, Rudel is prohibited from recovering remedies with his reconfigured federal ERISA claim that could not be awarded under § 502(a).  As the Supreme Court has observed, "even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Davila*, 542 U.S at 217–28.

More specifically, to determine whether a state statute is preempted on the merits under § 502(a) as conflicting with ERISA's remedial scheme, we ask whether the statute would "significantly expand[] the potential scope of ultimate liability imposed upon [insurance providers]." *Id*. at 378–79. This "preemptive effect depends on the nature of the state

remedy, including the availability of non-ERISA compensatory and punitive damages." *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1146 (9th Cir. 2003).

Although we must ensure that state remedies do not expand the scope of relief available under ERISA, we begin with a "'starting presumption that Congress d[id] not intend to supplant . . . state laws regulating a subject of traditional state power' unless that power amounts to 'a direct regulation of a fundamental ERISA function.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir. 2019) (alterations in original) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016)), *petition for cert. filed*, No. 19-77 (Jul. 16, 2019); *see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (1985) (noting that the existence of § 514 evidences "the congressional decision to 'save' local insurance regulation").

In this case, the district court properly concluded that the Hawai'i Statutes do not impermissibly expand ERISA's remedial scope. On removal, Rudel's claim was effectively converted into a § 502(a) claim for benefits. The only question is the scope of the benefits to be awarded. The Hawai'i Statutes do not create a method for Rudel to collect additional benefits, nor do they subject the insurer to any additional liability. In short, the statutes do not create additional remedies not permitted by § 502(a). The Hawai'i Statutes only impact the insurer's subrogation rights against a third party tort settlement fund. There are no statutory provisions of ERISA that address reimbursement limitations. Thus, no conflict exists between the Hawai'i Statutes and ERISA.

The Supreme Court's decision in *Rush* is instructive. In *Rush*, the Illinois state statute at issue permitted patients to seek an independent physician's opinion regarding the medical necessity of a procedure. 536 U.S. at 361. If the independent physician determined that the procedure was medically necessary, the insurance provider was required to cover the service. *Id.* at 383. The insurance provider argued that the statute expanded the remedies permitted under § 502, in part because the statute created an alternative dispute resolution process that would impermissibly expand ERISA's remedial scheme. *Id.* at 383–84.

However, the *Rush* majority rejected this argument. It held the state statute did not provide a scheme that would "give the independent reviewer a free-ranging power to construe contract terms" and exceed ERISA's boundaries. *Id.* at 382–83. Instead, the second-opinion procedure merely permitted an alternative opinion regarding whether benefits were due—at all times, the action remained one for the recovery of benefits pursuant to an ERISA plan. *Id.* at 382–83. Thus, the second-opinion procedure for dispute resolution did not enlarge the scope of liability under ERISA. *Id.* at 383–85.

Similarly, in *Singh*, the Fourth Circuit held that a state antisubrogation statute that prohibited insurance providers from seeking reimbursement from a third-party settlement was saved from preemption. 335 F.3d at 281. The Fourth Circuit reasoned that the statute "simply mandat[ed] or prohibit[ed] certain terms of policy coverage" and did not "force a choice between State regulation of insurance and the prescribed remedies of § 502(a)." *Id.* at 287–88. The court pointed out:

>  While ERISA’s civil enforcement scheme contained in § 502(a) creates an exclusive set of remedies that even a state regulation of insurance may not supplement or supplant, ERISA ‘contains almost no federal regulation of the terms of benefit plans’ that would conflict with a substantive provision such as the subrogation prohibition.

*Id.* at 288 (quoting *Metro. Life Ins.*, 471 U.S. at 732).

Thus, the state antisubrogation statute merely “operate[d] . . . to define the scope of a benefit” provided by an ERISA-governed plan. *Id.* at 288. It did not create a new remedy. *Id.* at 289; *see also UNUM Life Ins. Co.*, 526 U.S. at 376 n.7 (holding that a California statute providing employers be designated an insurer’s agent for purposes of filing ERISA claims was not preempted because the petitioner sought only benefits due pursuant to ERISA, and not separate remedies).

The situation is identical here. The Hawai’i Statutes operate to define the scope of a benefit provided by the Plan; they do not create additional remedies not permitted by ERISA. Thus, because the statutes do not impermissibly expand the scope of liability outlined in § 502(a), they are not conflict preempted and can apply the rule of decision.

2

*Elliot* does not compel a contrary result, as HMAA contends. There, we held as preempted on the merits Montana’s Unfair Trade Practices Act (“UTPA”)—a statute that, in relevant part, permitted awards of punitive damages. 337 F.3d at 1141, 1147. We held that a petitioner’s claim

"relie[d] in the first instance on Montana's UTPA's civil enforcement provision" because it "provide[d] damages above and beyond those provided in ERISA, including punitive damages."  *Id.* at 1147.  Thus, the statute was completely preempted under § 502.  *Id.*; *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136 (1990) (holding preempted a Texas cause of action that converted an equitable claim under ERISA to a claim for damages under state law); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50–56 (1987) (holding preempted Mississippi state common law causes of action for claims-processing errors that permitted punitive damages because ERISA's civil enforcement scheme "would make little sense if the remedies available to ERISA participants . . . could be supplemented or supplanted by varying state laws"); *Barber v. UNUM Life Ins. Co.*, 383 F.3d 134, 141 (3d Cir. 2004) (holding preempted a state remedy that permitted ERISA-plan participants to recover punitive damages for bad faith conduct).

Thus, because the Hawai'i Statutes merely provide the analytical framework by which the court is to decide the § 502(a) action and do not create causes of action that permit recovery beyond that permitted under ERISA, the Hawai'i Statutes are distinguishable from the state statutes in *Elliot*, *Ingersoll-Rand*, *Pilot Life*, and the other cases cited by HMAA and amicus curiae HMSA.  All of those cases involved state statutes that provided additional damages or remedies outside the scope of ERISA's remedial scheme.  We agree with the Secretary of Labor that here is no such provision here.

And, as was true in *Singh*, the Hawai'i Statutes do not conflict with an ERISA provision because there are no statutory provisions of ERISA that address reimbursement

limitations.  *See also Depot, Inc.*, 915 F.3d at 667 (holding that state law claims that did not have corresponding, conflicting provisions in ERISA did not provide an impermissible alternative enforcement mechanism).   The Hawai'i Statutes merely regulate the terms that an ERISA plan provider may employ—they do not offer any benefits that conflict with those provided by ERISA.

3

HMAA argues that permitting a court to decide a petition for a determination of lien pursuant to §§ 431:13-103 and 663-10 creates a new judicial vehicle for deciding claims outside the bounds of ERISA's comprehensive civil enforcement scheme.   Similarly, amicus curiae HMSA argues, "[T]he Hawai'i statutes at issue provide for an entire judicial process alternative to § 502, creating precisely the type of adjudication that falls within *Pilot Life*'s categorical bar."  HMAA points out that the state statute in *Singh* did not provide a separate procedure to determine the amount and validity of the lien, but instead prohibited reimbursement outright.  HMAA relies in part on the suggestion in *Rush* that a "conventional evidentiary hearing" held during an arbitration might be preempted.  536 U.S. at 383.

These arguments are not persuasive.  In *Rush*, the Court's primary concern in discussing an alternate form of arbitration was that such a scheme would undermine "the manifest congressional purpose to confine adjudication of disputes to the courts."  *Id.* at 381–82.   Here, because the case was removed under § 502(a) and effectively became a § 502(a) action for benefits, there is no question that the federal courts remain the forum—and ERISA the vehicle—for determining Rudel's entitlement to any benefits. *See id*. at 379–80 (noting

that though the independent review process in that case could be dispositive of the validity of a claim for benefits, it did not impermissibly enlarge the scope of liability under § 502(a)).

4

Finally, HMAA suggests that because the state statutes were completely preempted under § 502(a), they necessarily must be in conflict with § 502(a) and therefore cannot form the basis for decision. This argument confuses complete preemption for jurisdictional purposes with conflict preemption. As we have discussed, by operation of § 502(a), Rudel's state law claims are completely preempted, allowing the insurer to remove the case to federal court. But, although his state law claims are extinguished, his federal ERISA rights under § 502 are not. The Hawaiʻi Statutes do not conflict with § 502, so conflict preemption does not apply, and because the Hawai'i Statutes are saved from express preemption under § 514, they may supply the rule of decision for Rudel's federal ERISA action.

C

Thus, the district court correctly concluded that Rudel's claims were not ERISA-preempted. Because the Hawaiʻi Statutes regulate insurance and are directed at insurance practices and impact risk pooling, they are saved from express preemption under § 514. And because they do not impermissibly expand the scope of available ERISA remedies, the Hawai'i Statutes are not preempted by the merits under § 502(a).

V

In sum, the district court properly exercised federal jurisdiction and correctly denied Rudel's remand motion because his state law claims could have been brought as ERISA claims. The court also correctly held that the Hawai'i Statutes were saved from preemption pursuant to § 514, were not subject to conflict preemption under § 502, and provided the relevant rule of decision in the removed action. Because the parties stipulated that HMAA had no valid lien if the Hawai'i Statutes provided the relevant rule of decision, the district court also properly entered a final judgment in Rudel's favor. We need not—and do not—reach any other issue urged by the parties. All pending motions are denied as moot.

**AFFIRMED**.