RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0327p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ERIC L. PATTERSON, on behalf of himself and all
others similarly situated,

*Plaintiff-Appellant*,

*v.*

No. 25-3175

UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE
SERVICES, INC.; UNITED HEALTHCARE INSURANCE
COMPANY; OPTUM, INC.; SWAGELOK COMPANY,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-00378—J. Philip Calabrese, District Judge.

Decided and Filed: December 2, 2025

Before: SILER, NALBANDIAN, and READLER, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Patrick J. Perotti, Patrick J. Brickman, DWORKEN & BERNSTEIN CO., L.P.A.,
Painesville, Ohio, Benjamin P. Pfouts, THE HENRY FIRM, Chagrin Falls, Ohio, for Appellant.
Wesley E. Stockard, LITTLER MENDELSON, P.C., Atlanta, Georgia, Noah G. Lipschultz,
LITTLER MENDELSON, P.C., Minneapolis, Minnesota, for Appellees.

───────────────

## OPINION

───────────────

READLER, Circuit Judge. Eric Patterson has had a long-running dispute with
UnitedHealth Group, his insurer and health plan administrator. In short, Patterson claims that
United collected reimbursement for medical expenses paid on Patterson's behalf even though his
health plan gave United no such right. For that reason, Patterson sued United and others under

the Employee Retirement Income Security Act of 1974 (ERISA).  The district court dismissed those claims, and we largely affirmed the district court on appeal.  *See Patterson v. United HealthCare Ins. Co.*, 76 F.4th 487 (6th Cir. 2023).  While that appeal was pending, however, Patterson filed an action in state court asserting state law claims against defendants that echoed in substance his federal claims.  Defendants removed on the grounds that ERISA completely preempted Patterson's state law claims and sought dismissal of what it viewed to be a lawsuit duplicative of its federal case.  The district court again granted dismissal, and Patterson again appealed.  We agree with the district court and affirm.

I.

We adopt our previous statement of the facts, which we summarize here.  *See Patterson*, 76 F.4th at 491–92.  United provided health insurance to Patterson and his wife through Patterson's employer, Swagelok Company.  As ERISA governed Patterson's health plan, *see* 29 U.S.C. §§ 1101, 1103(a), United, in accordance with ERISA requirements, delivered to Patterson a summary plan description, which offered a synopsis of his plan's terms.  *See id.* § 1022(a).  Patterson, however, did not receive a copy of the full plan document.

According to the plan summary, if Patterson recovered from a third party for an insured incident, the plan had a right to claim reimbursement from that recovery.  That language came to the fore when Patterson sustained injuries in a collision with a semi-truck.  United covered his accident-related medical bills as required.  At the same time, Optum, United's agent and subsidiary, informed Patterson that it would invoke the plan's reimbursement rights if he recovered from the other driver.  To that end, Patterson sued the other driver's employer in state court and, within the same action, sought declaratory judgment against the plan as to reimbursement.  During the litigation, Patterson alleged that United falsely claimed that a full plan document did not exist.  Ultimately, Patterson recovered from the other driver's employer, and, in so doing, struck an agreement to pay his plan $25,000 in reimbursement.

Ordinarily, that would have settled the matter.  But as fate would have it, Patterson's wife sustained injuries in an unrelated traffic accident just months after her husband.  Things went for Ms. Patterson much like they did for Mr. Patterson:  United paid the medical bills, Optum

notified the Pattersons about reimbursement, and Patterson's wife sued the other driver in state court while simultaneously seeking a declaratory judgment against the plan. This time, however, United produced in discovery the very plan document it had previously claimed not to exist. The newly revealed plan document stated that it controlled in case of any discrepancy between it and the plan summary. And, unlike the summary, the document had nothing to say about a reimbursement obligation on the Pattersons' part. On that basis, the state court entered a declaratory judgment in Ms. Patterson's favor, holding that the Pattersons' plan did not allow United to collect reimbursement. The Ohio Court of Appeals affirmed. *Patterson v. Am. Fam. Ins. Co.*, 178 N.E.3d 573, 581 (Ohio Ct. App. 2021).

With his plan document in hand, Patterson sued United, Optum, Swagelok, and others under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), alleging that defendants defrauded him out of the $25,000 he previously paid in reimbursement. The district court granted defendants' motion to dismiss on standing grounds and for failure to state a claim. *Patterson v. UnitedHealthcare Ins. Co. (Patterson I)*, No. 21-cv-470, 2022 WL 279952, at *5, 7 (N.D. Ohio Jan. 31, 2022). Patterson appealed. We mostly affirmed the dismissal of his claims, allowing only his ERISA claim under § 1132(a)(3) to proceed. *Patterson*, 76 F.4th at 500. The action remains pending before the district court on remand. *Id.*; *see Patterson v. UnitedHealthcare Ins. Co. (Patterson II)*, 762 F. Supp. 3d 643, 666 (N.D. Ohio 2025).

That takes us to the present lawsuit and its relationship to the first. In Patterson's earlier case, the district court dismissed Patterson's federal claims on the merits, and, as a result, declined to exercise supplemental jurisdiction over the state law claims. *Patterson I*, 2022 WL 279952, at *7–9. While our ruling on Patterson's first appeal was pending, he refiled his state law claims in state court, naming United, Optum, and Swagelok as defendants. On behalf of himself as well as two putative classes, Patterson asserted claims for fraudulent and negligent misrepresentation, conversion, civil conspiracy, and unjust enrichment. Defendants removed the action to federal court and sought dismissal; Patterson moved to remand.

The district court sided with defendants. In its view, Patterson's state law claims were a repackaged version of his still-pending ERISA lawsuit. *Patterson II*, 762 F. Supp. 3d at 665–66. After all, the district court reasoned, both actions rested on the same factual events and sought

the same outcome: a return of the $25,000 Patterson says he should not have had to pay because of the plan's terms. *Id.* As a result, the district court accepted defendants' argument that ERISA completely preempted Patterson's state law causes of action. *Id.* Yet rather than direct Patterson to replead his claims, the district court opted to dismiss the action outright. *Id.* Why? Patterson, recall, already had one pending ERISA suit—the remand of his original appeal—and the district court had just denied defendants' motion to dismiss that action. *Id.* at 655–60. In place of allowing duplicate lawsuits to proceed, the district court dismissed this later-filed action. *Id.* at 666. Patterson appealed, which brought the parties back before us.

## II.

We review de novo both the district court's refusal to remand and its dismissal of Patterson's complaint. *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 501–02 (6th Cir. 2010); *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617, 621 (6th Cir. 2022) (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 604 (6th Cir. 2007)). Taking Patterson's well-pleaded factual allegations (and the reasonable inferences therefrom) as true, we assess whether Patterson has plausibly shown entitlement to relief. *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Turn, then, to Patterson's appeal. To his mind, the district court first erred in deeming his state law claims completely preempted by ERISA. As he sees it, those claims are wholly independent causes of action that can proceed "side by side" with his parallel ERISA suit. Appellant Br. 3.

At the outset, it bears addressing how we understand the notion of "complete preemption." Federal courts, it is well understood, have jurisdiction over only a limited set of cases. One category of that jurisdiction is federal question jurisdiction, which covers "all civil actions arising under" federal law. 28 U.S.C. § 1331. In determining what "arises under" federal law, we follow the "well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation modified). That is, we look to what "necessarily appears" on the face

of the plaintiff's properly pleaded complaint to assess whether a claim under federal law has been asserted. *Id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)).

ERISA, however, is a rare exception to the well-pleaded complaint rule. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir. 2013). The law has such "extraordinary pre-emptive power . . . that [it] converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). In other words, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" can be removed to federal court, regardless of whether ERISA shows up on the face of the complaint. *Davila*, 542 U.S. at 209. Understood that way, complete preemption is better described as a jurisdictional doctrine than a typical preemption defense. *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (recognizing the "misleadingly named doctrine" is "more aptly described as a jurisdictional doctrine (citation modified)). We note that complete preemption differs from "express preemption" under ERISA, the latter being a statutory creation that *does* afford a traditional preemption defense, but not a basis for removal. *See Gardner*, 715 F.3d at 612 (citing 29 U.S.C. § 1144(a)). The parties agree that this appeal concerns only complete preemption.

With this understanding in mind, turn to the issue at hand: whether ERISA completely preempts Patterson's claims. The Supreme Court in *Davila* fashioned this inquiry into a two-pronged test. Under *Davila*, ERISA completely preempts a state law claim if both (1) "the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'"; and (2) "the plaintiff does not allege the violation of any 'legal duty . . . independent of ERISA or the plan terms.'" *Gardner*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. at 210). As explained next, both prongs are met here.

A. Start with prong one. Our examination looks beyond the label placed on a state law claim and instead asks whether it is "in essence" one "for the recovery of an ERISA plan benefit." *K.B. ex rel. Qassis v. Methodist Healthcare – Memphis Hosps.*, 929 F.3d 795, 801 (6th Cir. 2019) (citation modified). Put differently, "if an individual, at some point in time, could have brought his claim under [§ 1132(a)]," then an action alleging essentially the same wrongdoing meets *Davila*'s first prong, regardless of how it is packaged. *Davila*, 542 U.S. at

210. Here, as in district court, defendants assert that Patterson's claims replicate two claims articulated in 29 U.S.C. § 1132(a):  one, under § 1132(a)(1)(B), that a party may "recover benefits due to him under the terms of his plan" and "enforce his rights under the terms of the plan," *id.*; and, two, that a party under § 1132(a)(3) may "enforce . . . the terms of the plan" or "redress [ERISA] violations" like breach of fiduciary duty, *id.*

1.  Take first § 1132(a)(1)(B).  Although we have yet to address an on-all-fours case, several of our sister circuits have done so.  A collection of circuits has held that similar state law challenges to an ERISA plan's reimbursement rights are in essence disguised suits "to recover benefits due" under § 1132(a)(1)(B).  *See Rudel v. Haw. Mgmt. All. Assoc.*, 937 F.3d 1262, 1270–71 (9th Cir. 2019) (citation modified); *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006); *Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 438–39 (5th Cir. 2003) (en banc); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 291 (4th Cir. 2003).  *But see Wurtz v. Rawlings Co.*, 761 F.3d 232, 242–43 (2d Cir. 2014).  To be sure, several of these cases predate *Davila*.  That said, their analyses in effect answer the same question posed by *Davila*'s first prong.  *See Rudel*, 937 F.3d at 1271 (citing these cases).

One particularly emblematic example is the Third Circuit's decision in *Wirth*.  *See* 469 F.3d at 306–07.  Like Patterson, Wirth was injured in an auto accident and received medical care covered by his insurer.  *Id.*  When he obtained a settlement from the other driver, his insurer stepped in to demand reimbursement from those monies.  *Id.* at 307.  Wirth ultimately paid out a sum to satisfy his insurer's claim.  *Id.*  But Wirth disputed those reimbursement rights, and, like Patterson, filed a class action in state court under state law claiming, among other things, that his insurer had been "unjust[ly] enrich[ed]" by improperly collecting reimbursement.  *Id.*  The Third Circuit disagreed, holding that Wirth's state law theories were recycled § 1132(a)(1)(B) claims to "recover benefits due" or to "enforce his rights under the terms of the plan."  *Id.* at 308–09 (quoting 29 U.S.C. § 1132(a)(1)(B)).  And because Wirth sought to recover a portion of benefits wrongfully taken from him, § 1132(a)(1)(B) completely preempted his claims.  *Id.*  Although Wirth's insurer initially paid his benefits in full by paying for his healthcare, the appeals court reasoned that the insurer's subsequent pursuit of reimbursement "resulted in diminished

benefits" to Wirth. *Id.* at 309. In the court's words, "[t]hat the bills and coins" used to reimburse his insurer were not "literally the same as those used . . . to cover Wirth's injuries is of no import—'the benefits are under something of a cloud.'" *Id.* (quoting *Arana*, 338 F.3d at 438).

Patterson raises the same objection as that raised in *Wirth*. As he sees things, he does not seek to recover benefits under § 1132(a)(1)(B) because his "benefits were already paid" to him, meaning "the obligation of the ERISA plan to provide benefits was over." Appellant Br. 29 (citation modified). But it would be odd for complete preemption under ERISA—and thus our subject matter jurisdiction—to hinge on "the fortuity of *when* a plan term was misapplied to diminish the benefit." *Levine*, 402 F.3d at 163 (quoting *Singh*, 335 F.3d at 291). For today's legal inquiry, it makes no practical difference whether the plan clawed back Patterson's benefits after paying for his care or simply withheld them until getting its claimed share of the recovery. In either case, benefits are "due." *See Rudel*, 937 F.3d at 1271 ("[Plaintiff] has not fully recovered the benefits because he has not obtained the benefits free and clear of the plan's claims." (citation modified)).

What is more, not only *could* Patterson have brought a § 1132(a)(1)(B) claim, but in fact he also *did* bring one, albeit in his first federal lawsuit. There, Patterson leveled the same core accusation that he levels here—that defendants tricked him into paying reimbursement using a misleading plan summary. This reality only reinforces the conclusion that Patterson's state claims double as an ERISA claim "to recover benefits due to him" under § 1132(a)(1)(B). That Patterson disavowed the theory in his earlier appeal makes no difference for our purposes.

Seeing things differently, Patterson emphasizes that ERISA neither requires nor prohibits reimbursement, which, in his view, means that his claims do not implicate ERISA. But whether ERISA speaks to reimbursement by its terms does not matter. Again, *Davila* asks whether Patterson's complaint arises from "the terms of [his] ERISA-regulated employee . . . *plan*." *Davila*, 542 U.S. at 210 (emphasis added). Just so here.

Patterson's cited cases do not move the ball. He principally cites the Second Circuit's decision in *Wurtz*. *See* 761 F.3d at 242–43. There, the plaintiffs challenged their plan's reimbursement rights based on a state insurance statute. *Id.* at 242. The court of appeals held

that *Davila*'s first prong was unmet because the plaintiffs' claims were "based on a state law" and not on any right provided "under the terms of their plans." *Id.* (citation modified). We cannot follow that lead. For one thing, *Wurtz*'s emphasis on the plaintiff's claimed legal basis for demanding benefits conflicts with our instruction to look to the "essence" of the claim. *K.B.*, 929 F.3d at 801 (citation modified). That point is better addressed, if anywhere, at *Davila* prong two, which considers whether the state claim implicates a legal duty independent of ERISA or the plan's terms. *See infra*. For another, *Wurtz* assumed that complete preemption could not apply because ERISA's express preemption provision leaves a carve-out for state insurance statutes. 761 F.3d at 242. That wrinkle does not appear here.

At any rate, it bears emphasizing that *Wurtz* rejected complete preemption because the plaintiffs challenged their insurer's reimbursement rights based upon a state statute. 761 F.3d at 242. They specifically did not "contend that they ha[d] a right to keep their tort settlements under the terms of their plan[s]." *Id.* (citation modified). So too for Patterson's other cited cases. *See Cmty. Ins. Co. v. Rowe*, 85 F. Supp. 2d 800, 816 (S.D. Ohio 1999) ("general laws of Ohio"); *Cottrill v. Allstate Ins. Co.*, No. 2:09-cv-714, 2009 WL 3673017, at *3 (S.D. Ohio Oct. 30, 2009) ("Ohio common law"). Here, on the other hand, Patterson asserts that his entitlement to benefits originates with the "terms and conditions" of his plan—not some freestanding source of state law. R. 1-1, PageID 14–19. If anything, Patterson's citations illustrate why this case makes for a much easier call. In the end, we agree with defendants that Patterson's claims meet *Davila*'s first prong via § 1132(a)(1)(B).

2. The district court, for its part, did not consider preemption under § 1132(a)(1)(B), and instead found Patterson's claims encompassed by § 1132(a)(3). *Patterson II*, 762 F. Supp. 3d at 663–64. Section 1132(a)(3) allows plan beneficiaries to sue "to enforce . . . the terms of the plan" and ERISA itself, *id.*, including ERISA's statutory fiduciary duties, §§ 1104, 1106. Although we have not precisely considered whether complete preemption extends to § 1132(a)(3), we observe that both *Davila* and its forerunner, *Taylor*, refer to "[t]he pre-emptive force" of § 1132(a) as a whole. *Davila*, 542 U.S. at 209; *Taylor*, 481 U.S. at 65–66; *see also Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (extending complete preemption to § 1132(a)(2), "see[ing] little reason to distinguish" it from § 1132(a)(1)(B)). And, we note, both

parties presume that § 1132(a)(3) can completely preempt state law claims.  *See, e.g.*, *Singh*, 335 F.3d at 291; *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 606 n.18 (2d Cir. 2024).  That said, as we have already held that Patterson's claims satisfy *Davila*'s first prong via § 1132(a)(1)(B), we need not reach § 1132(a)(3).

B.  Turn next to prong two:  whether Patterson's claims implicate a duty "independent of ERISA or the plan terms."  *Gardner*, 715 F.3d at 613 (quoting *Davila*, 542 U.S. at 210).  In employing the phrase "independent," *Davila* did not just mean that the duty "nominally arises from a source other than the plan's terms."  *Id.*  Rather, a duty in this setting is "independent" only if it is "not derived from, or conditioned upon, the terms of the [plan]" and "nobody needs to interpret the plan to determine whether that duty exists."  *Id.* at 614 (citing *Davila*, 542 U.S. at 210).

Each of defendants' alleged breaches of duty rests entirely upon what Patterson's ERISA-governed plan does (or does not) say.  Start with his fraud claim.  Patterson alleges that defendants falsely represented that he "had agreed to provide [reimbursement] rights" in his plan and that defendants either knew that was false or had "negligently failed to read or review the underlying plan document to confirm."  R. 1-1, PageID 22–23.  In other words, the rights and duties set forth in Patterson's plan are the very basis of the fraud alleged.  Patterson counters that the "dut[y] to not defraud" exists on its own.  Reply Br. 9.  True enough.  Yet that duty is only "nominally" independent here.  *Gardner*, 715 F.3d at 613.  Defendants' duty not to misrepresent the parties' obligations under the plan, of course, could not exist absent the plan and its terms.

Patterson's other causes of action go the same way.  For conversion, Patterson alleges, as he must, that he "had the right to possession of the money [he] paid [d]efendants."  R. 1-1, PageID 25.  Yet defendants did not "wrongful[ly]" interfere with that right if his plan imposed a duty to reimburse.  *Zipkin v. FirstMerit Bank N.A.*, 176 N.E.3d 86, 97 (Ohio Ct. App. 2021).  As for unjust enrichment, Patterson dropped that claim in the district court, but it goes without saying that no one was "unjustly" enriched at Patterson's expense if he did, in fact, owe reimbursement under the plan.  Last is civil conspiracy.  This is not a separate tort; instead, it requires an actionable "underlying tort."  *Addison Holdings, LLC v. Fox, Byrd & Co.*, 203

N.E.3d 1259, 1286 (Ohio Ct. App. 2022). Patterson concedes that this theory rises or falls with his others, and we find that they all fall under *Davila*'s second prong.

Patterson resists this conclusion in a few ways. None are availing. He first claims that the circumstances of his case obviate any "need[] to interpret the plan." *Gardner*, 715 F.3d at 614. According to Patterson, defendants only lied about the "existence" of the plan document, not its "meaning." Reply Br. 2. We disagree. Upon discovery of the plan document's "existence," the state court had to spill ink ascertaining its "meaning" in relation to the allegedly fraudulent plan summary. *See Patterson v. Am. Fam. Ins. Co.*, 178 N.E.3d 573, 578–81 (Ohio Ct. App. 2021). Patterson also insists that this prior state court ruling as to reimbursement means that a federal court need not consult the plan to rule in his favor. This point too misses the mark. Regardless of procedural history, for Patterson's claims to go on, a court—whether an Ohio court or elsewhere—must interpret his ERISA plan and determine whether it created a duty to provide reimbursement-free benefits. That is, "[some]body needs to interpret the plan." *Gardner*, 715 F.3d at 614.

Patterson also posits that there is something special about common law fraud claims like his—namely, that stopping fraudsters is a "field[] of traditional state regulation" into which Congress presumptively did not mean to intrude. Appellant Br. 22–25 (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995)). But to the extent such a presumption even exists, it has not been discussed in reference to complete preemption under ERISA. *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 325–26 (2016) (casting doubt on this presumption with respect to express preemption). By contrast, we can and routinely do find common law fraud claims completely preempted. *See, e.g.*, *Briscoe v. Fine*, 444 F.3d 478, 500 (6th Cir. 2008) ("fraud, misrepresentation, and concealment"); *Arora v. Henry Ford Health Sys.*, No. 17-2252, 2018 WL 3760888, at *3 (6th Cir. July 9, 2018) ("fraud and fraudulent concealment").

Lastly, Patterson marshals a series of decisions in which fraud-based claims evaded complete preemption. But those cases only go to show why this one meets *Davila*'s second prong. Other than *Wurtz*, Patterson cites no case where a reimbursement dispute flunked *Davila*'s second prong. And, as discussed, we find *Wurtz* distinguishable and the decisions of

other courts better reasoned in any event. *See Rudel*, 937 F.3d at 1271 & n.5 (finding reimbursement dispute met *Davila*'s second prong and distinguishing *Wurtz*); *Noetzel v. Haw. Med. Serv. Ass'n*, 183 F. Supp. 3d 1094, 1107–08, 1110–11 (D. Haw. 2016) (same).

All things considered, we agree with the district court in holding that Patterson's claims meet both *Davila* prongs and are thus completely preempted by ERISA.

## III.

That leaves us with one last housekeeping matter. We mentioned earlier that complete preemption by itself does not result in dismissal of the "preempted" claims. Ordinarily, the district court can direct the plaintiff to amend the complaint, or the plaintiff can simply recast the existing pleading as one asserting § 1132(a) claims. *See Hogan*, 823 F.3d at 884. Here, however, the district court dismissed the action altogether. *Patterson II*, 762 F. Supp. 3d at 665–66.

We see no misstep in that approach. Although one could recharacterize Patterson's claims under § 1132(a), the district court was not required to do so. Patterson raised a § 1132(a)(1)(B) claim in his original federal action, and we previously found that he had "disavow[ed]" it during his first appeal. *Patterson*, 76 F.4th at 495. Patterson likewise maintains in this action that he could not have brought a § 1132(a)(1)(B) claim. Having "disclaimed reliance" on the claim, he cannot assert it now. *See Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 727 (6th Cir. 2021). As for § 1132(a)(3), the provision upon which the district court based its refusal to remand to state court, Patterson's original federal action—now before the district court on remand—currently asserts that cause of action. To let Patterson replead his state law claims under ERISA would thus result in duplicative proceedings before the same court. In that situation, district courts enjoy the discretion over their dockets to dismiss duplicate cases. *See Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (citing *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)). Indeed, given that Patterson's state law claims "aris[e] from the same set of facts," the district court may have had this option from the start. *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020) (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) (explaining a district court's power to

dismiss an action when the plaintiff has engaged in "claim-splitting"). Equally true, Patterson does not fault the district court for dismissing this later-filed action. Neither do we.

*          *          *          *          *

We affirm.